**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| In re:<br><br>CHOWDER GAS STORAGE FACILITY, LLC, *et al.* [1]<br><br>Debtors. | Case No. 17-17245 (AIH)<br>(Jointly Administered)<br><br>Chapter 11<br><br>Judge Arthur I. Harris |
|---|---|

**CHAPTER 11 TRUSTEE'S MOTION FOR ORDERS (I)(A) APPROVING BID PROCEDURES FOR THE PUBLIC AUCTION OF THE DEBTORS' ASSETS, (B) SCHEDULING AN AUCTION AND SETTING RELATED DEADLINES, (C) APPROVING THE FORM AND MANNER OF NOTICE OF PUBLIC AUCTION AND ASSUMPTION AND ASSIGNMENT OF OIL AND GAS LEASES; AND (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF OIL AND GAS LEASES AND THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

Anthony J. DeGirolamo, the duly-appointed chapter 11 trustee (the "Trustee") for Chowder Gas Storage Facility, LLC ("Chowder") and Lake Shore Gas Storage, Inc. ("Lake Shore" and together with Chowder, the "Debtors"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby respectfully moves this Court for orders (I)(A) Approving Bid Procedures for the Public Auction of the Debtors' Assets, (B) Scheduling an Auction and Setting Related Deadlines, (C) Approving the Form and Manner of Notice of Public Auction and the Assumption and Assignment of Oil and Gas Leases; and (II) Approving the Assumption and Assignment of Oil and Gas Leases and Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of all Liens, Claims and Encumbrances (the "Motion"). The Trustee seeks an initial order approving, *inter alia*, the

[1] The Debtors are Chowder Gas Storage Facility, LLC and Lake Shore Gas Storage, Inc.

proposed bid and related procedures and a subsequent order approving the sale of the Debtors' assets and assumption and assignment of leases to the winning bidder(s) of the auction. Copies of proposed forms of orders approving the bid procedures and the sale of the Debtors' assets are attached hereto, respectively, as Exhibit A and Exhibit B.[2]

In support hereof, the Trustee respectfully represents as follows:

**Preliminary Statement**

1. The Trustee's objective in these jointly administered cases is to market and sell the Debtors' assets for the highest and best value with the primary goal of returning a dividend to creditors.

2. Soon after the Trustee's appointment he retained an investment banker in the oil and gas industry and extensively marketed the Debtors' assets. The Trustee sought to obtain a stalking horse bid, and recently the Trustee was pleased to report to the Court on April 24, 2019 that he received such a bid that was subject to further negotiation and due diligence. However, the proposed stalking horse decided to withdraw its interest in being a stalking horse bidder and instead has elected, like many other interested parties so far, to attend the public auction of the assets.

3. The market did not bring what the Trustee originally anticipated, but with the interest received thus far, the proposed auction is a necessary and appropriate exercise in an effort to return value to the estates' creditors and transfer responsible ownership of the assets.

[2] The attached orders are forms and are subject to further revision by the Trustee.

## Jurisdiction and Venue

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Procedural History

5. On December 9, 2017 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6. Chowder and Lake Shore initiated these chapter 11 proceedings after a judgment was entered on September 14, 2017 in favor of First National Bank of Pennsylvania ("FNBP") in the Cuyahoga County Court of Common Pleas against twelve entities and individuals[3] for approximately $11 million (the "Judgment").

7. On February 27, 2018, FNBP filed a motion seeking dismissal of the Debtors' cases (Doc. 27).[4]

8. On March 7, 2018, the United States Trustee ("UST") filed a motion seeking conversion or dismissal of these cases (Doc. 29).

9. As a result of the dismissal and conversion motions, on August 8, 2018, the Trustee was appointed and has been managing the Debtors' businesses and properties (Doc. 109).

10. On August 13, 2018, the Court entered an order authorizing the assumption of certain mineral rights Leases (defined below) (Doc. 112) (the "Assumption Order"). Pursuant to the Assumption Order, Debtors were authorized to assume the Leases with the right of

[3] The twelve entities and individuals are: Richard M. Osborne; Richard M. Osborne Trust; Junior Properties, Ltd.; Rigrtona Trust; Chowder Gas Storage Facility, LLC; Lake Shore Gas Storage, Inc.; Orwell-Trumbull Pipeline Co., LLC; Black Bear Realty, Ltd.; Hamilton Partners, Inc.; Estate of Jerome T. Osborne; Huron River Properties, Inc.; and Osborne Farms, LLC.

[4] On August 14, 2018, the Court entered an order of joint administration of the Debtors' cases (Doc. 118). Prior to that date, pleadings were simultaneously filed in both Debtors' cases. The Trustee is only referencing pleadings in case no. 17-17245.

assignment expressly reserved. The Leases are a primary component of the Debtors' Assets (defined below). A correct and true list of the assumed Leases is attached hereto as Exhibit C.

11. The Trustee retained Copper Run Capital LLC ("Copper Run") as investment banker *nunc pro tunc* on November 29, 2018 (Doc. No. 153) to market the Debtors' Assets. Such marketing efforts began in late October 2018.

12. Through Copper Run's efforts, the Trustee extensively marketed the Assets and located a number of parties interested in participating in the proposed auction of the Assets.

## DESCRIPTION OF THE ASSETS

13. Chowder is owned by Richard Osborne (85.93%) and FCCC Co. II LLC (14.07%). Chowder owns 100% of the shares of Lake Shore. The Assets to be sold as described herein are owned separately by Chowder and Lake Shore. Pursuant to the proposed bid procedures, the Trustee seeks to sell the Assets together or separately based on the highest and best bids.

### The Chowder Assets

14. The Chowder assets are interests in approximately 142 mineral rights leases (the "Leases")[5] comprising in excess of 7,000 acres in Columbiana and Mahoning Counties as described on Exhibit C. Of such acres, Chesapeake Energy Corporation ("Chesapeake"), who purchased the deep rights in 2010 for more than $9 million, conducted substantial due diligence and validated deep rights in no less than 4,060 acres. The deep rights reverted back to Chowder in June of 2018.

[5] As expressly included in the Assumption Order, each assumed Lease includes any modifications, amendments, addenda, supplements, restatements, ancillary documents and/or agreements related thereto.

15. Chowder holds a 60% interest in the Leases and The Blair Group[6] holds the remaining 40% interest. The Trustee seeks authority to sell and assign Chowder's 60% interest in the Leases. The rights under the Leases consist of both shallow (generally within the Bedford, Ohio, and Olentangy Shale formations) and deep rights (below the Oriskany formation including the Utica Shale formation). Specific details regarding the Leases and rights thereunder can be provided by Copper Run,[7] as well as access to a data room which provides more information on the Leases and their history.

16. Originally, the Leases were owned by The East Ohio Gas Company d/b/a Dominion East Ohio ("Dominion"). Dominion transferred the Leases to the Blair Group who in turn transferred the 60% working interest in the shallow and deep rights currently owned by Chowder. Dominion maintains certain bonds related to the Assets. If the Trustee is authorized to sell all Assets, bonding responsibilities related to the Assets, which are currently maintained by Dominion, will be transferred to the buyer(s) by Dominion.

**The Lake Shore Assets**

17. The Lake Shore Assets (the "Lake Shore Assets" and collectively with the Leases, the "Assets") are comprised of (i) rights under the Leases to a gas storage field located in the Oriskany Sandstone formation (the "Oriskany"), (ii) 18 gas storage wells and storage pipeline with 892 MMcf base gas and 2.3 Bcf working gas capacity in the Oriskany, and (iii) a compressor station, building and related equipment. The compressor station, building and related equipment were recently inspected and found to be in excellent condition.[8] Chowder

[6] The Blair Group consists of the following individuals and entities: William E. Blair, Richard W. Petticrew, Jeffrey B. Petticrew, C. Richard Petticrew Oil & Gas Trust, Ball Resources, Inc., 5 Star, LLC and Bass Energy, Inc.

[7] Questions about the Leases and other assets, access to due diligence materials and the data room can be achieved through contacting Brian Hoskins, (614) 888-1786 bhoskins@copperruncap.com or Jason Steven, (614) 313-9446 jstevens@copperruncap.com.

[8] The inspection report is available from Copper Run as part of any proposed purchaser's due diligence.

purchased the stock of Lake Shore in June of 2008 for $5 million. A description of the Lake Shore Assets from the bankruptcy schedules and an April 2007 asset purchase agreement with Dominion is attached hereto as Exhibit D.

**Marketing Efforts**

18. Copper Run ran an extensive marketing process in an effort to obtain a stalking horse bidder.

19. Copper Run assembled a target list of prospective buyers and contacts, representing oil and gas producers, land brokers and royalty interest firms, as well as attorneys, accountants and consultants affiliated with the oil and gas industry. Copper Run prepared a two-page informational overview detailing the Assets and process timeline, with an original target date for indications of interest (IOIs) set for January 24, 2019.

20. Copper Run distributed an initial email to 1056 recipients on or about December 18, 2019. Additionally, Copper Run made direct contact by phone and email with select active Ohio Utica shale drillers most capable of making an investment in Utica acreage for drilling purposes. Copper Run also reached out directly to key Ohio oil and gas companies with adjacent/nearby operations and/or investments. Copper Run distributed a second email to the same distribution January 8, 2019, and received a total of eight (8) requests for NDAs and seven (7) fully-executed NDAs with prospective buyers.

21. During January and February 2019 Copper Run held multiple in-person and phone meetings with the eight prospective parties. Over this time Copper Run and the Trustee elected to extend the IOI date to February 20, 2019, primarily due to requests from potential buyers under NDA for additional time to review.

22. Despite interest from numerous parties and a preliminary agreement with a stalking horse bidder which did not become binding, no stalking horse was located. However,

many parties indicated an interest in bidding at the proposed auction. Therefore, the Trustee concluded that a sale of all of Debtors' Assets by public auction is in the best interest of the Debtors' estates and creditors.

## REQUESTED RELIEF

23. The Trustee requests entry of an order: (i) approving bid procedures for the public auction of the Debtors' Assets; (ii) scheduling a public auction and setting related deadlines, and (iii) approving the form and manner of notice of auction and the assumption and assignment of the Leases. After the auction is concluded, the Trustee requests entry of an order approving the assumption and assignment of the Leases and the sale of the Debtors' Assets free and clear of all liens, claims and encumbrances to the successful bidder(s) at the auction.

### Bid Procedures

24. The bid procedures ("Bid Procedures") are designed to provide the Trustee with flexibility to sell and assign the Assets for the highest and best value, while providing transparency and a level playing field for all bidders. The Bid Procedures are annexed to the proposed Bid Procedures Order attached hereto as Exhibit A.

25. Key components of the Bid Procedures are:

i. Bidding for all Assets shall start at $180,000. All subsequent bids made thereafter shall be made in increments of at least $10,000. Bids for all Assets must allocate value to the Leases (including value to the shallow and deep rights) and the Lake Shore Assets.

ii. At the conclusion of the Auction of the combined Assets, parties will be permitted make separate bids on the Leases and the Lake Shore Assets. The minimum bid for the separate assets will be set pursuant to the allocation of the sale price by the bids for the combined Assets. If there is no Qualified Bidder (defined below) for

the combined Assets, the Trustee shall be authorized in his sole discretion to auction the Assets combined or separately with or without a minimum bid.

iii. To be a Qualified Bid (as defined in the Bid Procedures), parties **must agree** that their bids for the Assets are unconditional, binding offers subject only to acceptance by the Trustee and Court approval, include a 10% deposit in readily available funds (if accepted), and are subject to the attached short form of sale agreement (collectively with the annexed bill of sale and assignment of Lease rights, the "Agreement") which provides that the Assets are being sold "as is, where is" with no warranties whatsoever. A correct and true copy of a form of the Agreement is annexed hereto as Exhibit E. The Trustee reserves the right to modify the form of such Agreement.

iv. At the close of the auction the Trustee will announce the winning bidder(s) and the back-up bidder(s) and shall file a notice of same with the Court. Each such successful bidder **shall be required to sign** a form of the Agreement prior to the close of the auction.

26. The Trustee submits that the attached Bid Procedures are fair and reasonable and accomplish the goal of maximizing the value of the Assets and therefore requests that they be approved. If the Trustee is authorized to move forward with the auction as set forth in this Motion, then the Debtors' cases will move toward a swift conclusion following the closing of the sale of the Assets. As set forth in the Trustee's report (Doc. 144), the Trustee anticipates converting these cases to chapter 7 following the closing of the transaction, reconciling the few filed claims, filing a final report and making a distribution in accordance with the priorities of the Bankruptcy Code. Concluding these bankruptcies as quickly as possible is in the best interest of

all creditors because it will save costs that otherwise would arise with the continued administration of the estates in bankruptcy.

**Procedure for Assumption and Assignment of the Leases**

27. Pursuant to the Assumption Order, this Court previously authorized the Trustee to assume the Leases effective as of July 7, 2018, and expressly preserved the right of the Debtors (now the Trustee) to assign the Leases. The Trustee believes that based on such prior assumption and his continued lease payments he has the authority to assign the Leases without any further notice.[9] However, in light of the passage of time, in order to ensure that any and all defaults between the time of the previous assumption and the date of the proposed assignment are cured, and to allow the lessors with further due process, the Trustee shall provide a further *Notice of Assumption and Assignment of Oil and Gas Leases* (the "Assumption Notice") to all known lessors,[10] a correct and true form of which is attached hereto as Exhibit F. The Assumption Notice provides (i) a listing of Leases and cure amounts, if any, and an explanation of the right to adequate assurance of future performance, and (ii) information on the appropriate deadline and manner in which to object to the proposed assumption and assignment.

28. Within two (2) business days after the approval of the Assumption Notice, the Trustee intends to file the Assumption Notice with the Court and serve it on all known lessors.

29. As with the previous motion (Doc. 82) under which the Assumption Order was entered, the Trustee also requests that the Court waive the requirements of Bankruptcy Rule 6006(f)(6) which provides that "[a] motion to… assign multiple executory contracts or unexpired

---

9 Courts have recognized the right to assume a lease while maintaining the right to later assign the lease. *See In re Federated Dep't Stores*, 135 B.R. 941, 945 (Bankr. S.D. Ohio 1991) (allowing a one-year lapse of time between assumption and assignment), citing *In re Bricker Systems, Inc.,* 44 B.R. 952 (Bankr. E.D. Wisc. 1984).

10 The Trustee has received approximately 12 returned rental payment checks and has endeavored to locate new and better addresses where possible. The Trustee notes that under the "change in ownership clause" under the Leases the duty to advise the lessee of any change in ownership rests with the owner of the property. *See Conny Farms Ltd. v. Ball Res., Inc.*, 2013 Ohio App. LEXIS 2915, *15 (7th App. Dist. Columbiana County 2013)

leases that are not between the same parties shall… be limited to no more than 100 executory contracts or unexpired leases."

30. This waiver is permitted by Bankruptcy Rule 6006(e)(3)[11] and is justified because all other omnibus requirements are met except for the fact that there are approximately 142 Leases, instead of 100, and the fact that the proposed assignee is unknown because the Leases will be auctioned. To preserve valuable estate resources and limit administrative costs, the Trustee submits a waiver is justified and appropriate and requests that the Court grant such waiver.

31. Accordingly, the Trustee requests that of the form and manner of service of the Assumption Notice be approved.

**Scheduling, Notice and Deadlines for Proposed Public Auction**

32. The dates and deadlines set forth in this Motion and referenced throughout the attached Exhibits **are not final** until set forth in an entered Bid Procedures Order. Therefore, do not rely on such dates and deadlines until further notice is provided after entry of the Bid Procedures Order.

33. The Trustee proposes to provide notice of the public auction of the Assets (the "Auction Notice") in the form attached hereto as Exhibit G.

34. In accordance with Bankruptcy Rules 2002(a), 6004(a), 6006 and 9007, as well as local rule 9013-1, the Trustee proposes that any objections to the proposed assumption and assignment of the Leases and sale of the Assets be filed no later than [**June 18, 2019**] with any such objections being heard at the hearing on approval of the sale (the "Sale Hearing").

---

[11] *See In re Old Carco LLC*, 406 B.R. 180, 210 (Bankr. S.D.N.Y. 2009) (allowing and explaining basis for waiver of the 100 contract limitation in Bankruptcy Rule 6006(f)(6)).

35. Any party with an interest in bidding must provide their contact information and list of attendees no later than [**June 25, 2019]** to counsel for the Trustee at: jeremy.campana@thompsonhine.com. The Trustee reserves the right to cancel the auction if he determines that it is in the best interests of the Debtors' estates and creditors. In the event of cancellation, Trustee will file and serve a *Notice of Cancelled Auction* no later than [**June 28, 2019**.]

36. As described in the Auction Notice, the Trustee intends to hold a public auction for the Debtors' Assets at the law offices of Thompson Hine LLP, 127 Public Sq., 3900 Key Center, Cleveland Ohio 44114 on [**July 2, 2019 at 10 A.M. EDT**.] The auction will be conducted in accordance with the Bid Procedures. The Sale Hearing will be held on [**July 16, 2019 at 11 A.M. EDT**.]

37. The Auction Notice attached hereto is sufficient as it provides the terms and conditions of the sale, a description of the property to be sold and the time within which parties must respond in order to participate in the auction and/or object to the sale. The Auction Notice also directs parties to Copper Run who will provide access to a data room for due diligence purposes.

38. Within two (2) business days after the approval of the Auction Notice, the Trustee intends to file the Auction Notice with the Court and serve it broadly through Copper Run's distribution channels, which will include over 1000 recipients and no less than 20 parties who previously expressed an interest in bidding on the Debtors' Assets. The Trustee will also serve the Auction Notice on all creditors and lessors.

39. The Trustee respectfully submits that such notice is adequate and appropriate and therefore requests that the form and manner of service of Auction Notice be approved.

**Assumption and Assignment of the Leases and Sale of the Debtors' Assets Free and Clear of all Liens, Claims and Encumbrances**

*Assumption and Assignment of the Leases*

40. Section 365(b)(1) requires the cure of any defaults at the time of the assumption of such lease. At the time of the original assumption of the Leases, there were no cure amounts due and owing because the Debtors indicated that they were current on their lease payments. In addition, there were no objections to the cure amounts set forth in the original assumption motion (Doc. 82). The Trustee has made all of the rental payments post-petition that were due and owing under the Leases, notwithstanding some returned checks in the mail. *See* footnote 10. Therefore, at the time of the proposed assignment of said Leases, the Trustee has reason to believe that there will be no cure amounts due and owing.

41. Notwithstanding the Trustee's understanding that no amounts will be due on the Leases at the time of the assignment, the Trustee will provide the Assumption Notice to all lessors in the manner provided herein and as approved in the Bid Procedures Order.

42. In addition to the cure obligations, the requirement of adequate assurance of future performance under section 365(b)(1)(C) of the Bankruptcy Code is also met. The quarterly Lease payments recently were made. The Lease payments are modest, totaling approximately $38,000 annually. As part of the Bid Procedures, the Trustee requires the bidders to submit adequate evidence of financial wherewithal. To the extent that such financial wherewithal satisfies the Trustee of the ability to consummate the transaction, the Trustee submits that such ability also constitutes adequate assurance of future performance under the Leases.

43. Accordingly, in light of the foregoing, the Trustee requests that the Court enter an order approving the assumption and assignment of the Leases.

*Sale of the Debtors' Assets Free and Clear of all Liens, Claims and Encumbrances*

44. A debtor or trustee may sell property of the bankruptcy estate outside of the ordinary course of business, subject to the approval of the Bankruptcy Court after notice and a hearing. *See* 11 U.S.C. § 363(b)(1). Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may occur by private sale or by public auction. The Trustee requests authority to sell substantially all of Debtors' Assets to the best bid(s) at a public auction as determined in Trustee's sole discretion, free and clear of liens, claims, encumbrances, and interests, pursuant to section 363(f) of the Bankruptcy Code. Section 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> **(1)** Applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> **(2)** Such entity consents;
>
> **(3)** Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> **(4)** Such interest is in bona fide dispute; or
>
> **(5)** Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

45. The deep rights to the Leases are not encumbered. The Lake Shore Assets and the shallow rights to the Leases being sold are subject to the asserted first priority lien of FNBP. FNBP consents to such sale of the Assets free and clear of its lien interests. Therefore, the requirements of section 363(f) are met.

46. Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, case law has confirmed that sale of assets is appropriate if the sale is based upon a debtor's sound business judgment. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722

F.2d 1063, 1070 (2d Cir. 1983) (concluding that there must be an articulated business justification, other than the appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the bankruptcy judge may authorize such action). "In the context of auctions, courts defer to a debtor's business judgment when selecting the highest and best bid." *See In re Borders Grp., Inc.*, 453 B.R. 477, 482-83 (Bankr. S.D.N.Y. 2011), citing *In re Gulf States Steel, Inc. of Ala*., 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002). Indeed, "the trustee or DIP is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets; and although the trustee's or DIP's discretion is not without limit, the Court should not step in and assume a role and responsibility properly placed by the Code in another's hands." *In re Borders Grp. at 483, citing In re Castre, Inc*., 312 B.R. 426, 430-31 (Bankr. D. Colo. 2004).

47. The Trustee has sound business justifications for authorizing the sale by public auction. The Assets have been adequately marketed and despite a preliminary non-binding agreement, no binding stalking horse offer was accepted by the Trustee. The proposed auction will allow the transfer of the Assets to a buyer or buyers who will continue with the payment of the Lease obligations to the lessors, as well as responsibly operate the gas storage field in accordance with applicable law. Further, the goal for the sale is to generate adequate proceeds that will allow for some percentage payment to general unsecured creditors. If that goal is not met, then there are priority administrative expense claims that will be paid out of the proceeds from the Assets, including a $50,000 administrative claim of Zachary B. Burkons, the Receiver for Orwell-Trumbell Pipeline Co., LLC based on funds loaned to the Trustee (Doc. 145), as well as professional, investment banker and consultant fees.

48. To the extent of value returned from the Lake Shore Assets or the shallow rights on the Leases, the Trustee intends to return some benefit to FNBP as the secured creditor, subject to a surcharge under 11 U.S.C. § 506(c). The Trustee is currently in discussions with FNBP regarding said surcharge.

49. Based on the foregoing, the Trustee requests entry of an order approving of the assumption and assignment of the Leases and authorizing the sale of the Debtors' Assets free and clear of all liens, claims and encumbrances to the successful bidder(s) at the auction.

**Authority to Sell to Any Interested Party**

50. The Trustee seeks authority to sell to any interested party, as the ultimate goal is to monetize the Assets for the benefit of creditors and have the Assets responsibly owned and operated in accordance with applicable law. In particular, the Trustee understands that Mr. Mark Van Tyne, a principal of the Blackburn Company, the Trustee's retained oil and gas consultant (Doc. No. 147), or one of his affiliates is potentially interested in purchasing the Assets. Mr. Van Tyne and his affiliates currently operate unrelated oil and gas assets in NE Ohio and therefore are viable options to submit a Qualified Bid.

51. Local Rule 6004-1 provides that: "No professional person appointed in a case by order of the Court…. shall, directly or indirectly, purchase or acquire any interest in any asset of the estate." This rule would prohibit Mr. Van Tyne and his affiliates from purchasing the Assets. Such result is inconsistent with the goal of disposing the Assets to the highest and best bidder. However, Local Rule 1001-1(c) provides this Court with flexibility to order that certain local rules do not apply: "The Local Bankruptcy Rules shall apply to every case, proceeding, and matter pending in this district, *unless otherwise ordered*." At least one bankruptcy court has reached the same conclusion under similar local rules provisions. See *Official Comm. of Creditors Holding Unsecured Claims v. Lederman (In re Schwarcz)*, 2007 Bankr. LEXIS 4860,

at *34 (B.A.P. 9th Cir. 2007) ("Local Bankruptcy Rule 1001-1(b) provides that: 'The Local Bankruptcy Rules . . . shall be applied uniformly throughout this District unless otherwise ordered by the Court in a particular matter.' Since the local rules allow an individual bankruptcy judge to opt out of the rules in a particular matter, it cannot be an abuse of discretion for the court to fail to enforce its own discretionary rules." (citations omitted). Therefore, the Trustee respectfully requests that he be authorized to sell the Assets to any and all Qualified Bidders; including Mr. Van Tyne or his affiliates.

52. The Auction of the Debtors' Assets will be conducted good faith with numerous potential bidders after ample marketing. After the conclusion of the Auction, the Trustee will seek an order that contains findings that the buyer(s) is a good faith purchaser within the meaning of Bankruptcy Code section 363(m)[12] and, as such, is entitled to all of the protections afforded thereby and that neither the Trustee nor any potential buyer(s) have engaged in any conduct that would cause or permit the sale of the Debtors' Assets to be avoided under Bankruptcy Code section 363(n).

**Notice of the Motion**

53. The Trustee has provided notice of this Motion to: (i) all parties who receive electronic notifications through the Court's ECF system, which includes the office of the United States Trustee and counsel for FNBP, (ii) all creditors or their representatives who are scheduled, filed proofs of claim in the Debtors' cases or are lienholders of record, (iii) all lessors under the Leases, and (iv) all taxing authorities and other governmental units who may have an interest in the Assets. The Trustee submits that such notice is in compliance with Bankruptcy Rules 2002,

[12] To the extent applicable, insiders may also be considered good faith purchasers. See *Sugarloaf Indus. & Mktg. Co. v. Quaker City Castings, Inc. (In re Quaker City Castings, Inc.)*, 2005 Bankr. LEXIS 2211, at *19 (B.A.P. 6th Cir. 2005) (finding section 363(b) does not prohibit insiders from purchasing estate assets).

6004, 6006, 9007 and the local rules of this jurisdiction and constitutes due and adequate notice under the circumstances.

**Request for Waiver of Bankruptcy Rule 6004(h) and 6006(d)**

54. Bankruptcy Rules 6004(h) and 6006(d) provide that an order authorizing the sale of property or assignment of leases is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise. The Trustee requests waiver of this stay, as there has been ample notice to all interested parties and there is no just reason to delay of the closing of the sale.

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests that the Court enter orders: (I)(A) Approving Bid Procedures for the Public Auction the Debtors' Assets; (B) Scheduling an Auction and Setting Related Deadlines; (C) Approving the Form and Manner of Notice of Auction and the Assumption and Assignment of Leases; (II) Approving the Assumption and Assignment of the Debtors' Oil and Gas Leases and Granting Authority to Sell Substantially all of the Debtors' Assets; and (III) granting such other relief as the Court deems just and proper.

Dated: May 16, 2019

Respectfully submitted,

*/s/ Jeremy M. Campana*

Jeremy M. Campana (0074541)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Phone: 216.566.5936
Facsimile: 216.566.5800
Jeremy.Campana@ThompsonHine.com

*Counsel for Anthony J. DeGirolamo, Chapter 11 Trustee*